# UNITED STATES DISTRICT COURT
## for the
### Western District of Washington at Seattle

| | |
|---|---|
| MARK E. TOWNER ) | **Compliant** |
| 21 Lakewood Pl. ) | |
| New Orleans, LA 70131 ) | |
| ) | Civil Action No:   2:25-cv-00553-JNW |
| Plaintiff ) | |
| ) | Judge: |
| -vs- ) | |
| ) | |
| Defendant(s) ) | |
| ) | |
| A PLACE FOR ROVER INC. ) | |
| AARON EASTERLY ) | |
| BRENT TURNER ) | |
| CHARLIE WICKERS ) | |
| Registered Agent ) | |
| 711 Capitol Way S ) | |
| Ste 204 ) | |
| Olympia, WA 98501-1267 ) | |
| ) | |
| BLACKSTONE INC. ) | |
| Registered Agent ) | |
| Corporation Service Company (CSC) ) | |
| 251 Little Falls Drive, Wilmington, DE 19808 ) | |
| ) | |
| CHRISTOPHER RANDALL COOK ) | |
| 28 Willow Dr. ) | |
| Gretna, LA 70053 ) | |
| ) | |
| JANIS COOK ) | |
| 3936 Dominique Dr. ) | |
| Chalmette, LA 70043 ) | |
| ) | |
| ST. BERNARD PARISH ANIMAL CONTROL ) | |
| AMANDA FORDE ) | |
| 8201 W Judge Perez Dr. ) | |
| Chalmette, LA 70043 ) | |

| | |
|---|---|
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT<br>OFFICE OF THE GENERAL COUNSEL<br>1900 E Street NW, Washington, DC 20415<br><br>UNITED STATES OFFICE OF MEDICARE HEARINGS AND APPEALS<br>OFFICE OF GENERAL COUNSEL<br>200 Public Square, Suite 2600<br>Cleveland, OH 44114<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>OFFICE OF GENERAL COUNSEL<br>200 Independence Avenue SW<br>Washington, DC 20201 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Mark E. Towner, Plaintiff, respectfully requests a Jury Trial and the following complaint, motions, and exhibits be sealed by the court to protect confidential medical records and the identity of ALJ-1 brings civil action for violations of the United States Constitution, and intentional negligence against Defendants, A Place for Rover Inc., Aaron Easterly individually, Brent Turner individually, Charlie Wickers individually, Blackstone Inc, Christopher Randall Cook, individually, Janis Cook, individually, St. Bernard Parish Animal Control, United States Office of Personnel Management, United States Office of Medicare Hearings and Appeals, United States Department of Health and Human Services, for damages, waivers, rule alterations, and as grounds states:

**Introduction:**

1. This civil action arises under Washington State laws due to www.rover.com (A Place for Rover Inc. Terms of Service section 18 Governing Law and Jurisdiction, 18.1 "For users in the United States and Canada, these TERMS, and any dispute between you and Rover, will be governed by the laws of the State of Washington and applicable U.S. federal law, without regard to principles of conflicts of law, except that the Federal Arbitration Act will govern the interpretation and enforcement of Section 17 (the Arbitration Agreement). Unless you and we agree that any claim or dispute that arises between you and Rover must be resolved exclusively by a State or Federal court located in the State of Washington, and you

and Rover agree to submit to the personal jurisdiction of the courts located within Seattle, Washington for the purpose of litigating all such claims or disputes." is Unconstitutional on face under Seventh and Fifth Amendments because Defendants failed to comply with enforcement and certification of Federal, State, County, City, Business and Health Related Laws, enforce proper insurance requirements, control known dangerous and unpredictable dog breeds, to provide and maintain a searchable US Health data base of dog bites, and require all Dogs that have bitten a human be universally tagged by government tag so any enforcement agency can track and to generally ensure the safety of the Plaintiff, the Public and his property (Bella the Dog). In Washington State, statutes of limitations are laws that set time limits for initiating legal action, whether civil or criminal. In civil law, personal injury claims have a three-year limit from the date of the injury (RCW 4.16.080), while written contract disputes get six years (RCW 4.16.040).

**Federal Jurisdiction and Venue:**

1) This court has jurisdiction, and Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

    The Seventh Amendment to the United States Constitution guarantees that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."

    Defendant's Terms of Service subjected Plaintiff to file this action without affording Plaintiff the opportunity for a trial by jury.

    The matter in controversy exceeds $75,000 dollars, as it involves hundreds of thousands of ongoing medical payments and actual, compensatory, and punitive damages or "loss of employment benefits" exceeding 10 million dollars, qualifying it as a suit at common law under the Seventh Amendment.

    Defendants' actions, under federal law, deprived Plaintiff of their constitutionally protected right to a jury trial, as no adequate mechanism exists to provide such a trial despite the legal nature of the claims.

    As a direct and proximate result of Defendant's unconstitutional denial of a jury trial, Plaintiff has suffered "financial loss, emotional distress, and irreparable harm".

    WHEREFORE, Plaintiff requests declaratory judgment that WWW.ROVER.COM business model of using Browse Wrap, Click Wrap, or claims made by company's

counsel that by simply landing on their website using a search engine like Google somehow obligates a person to its Terms of Service ruled unconstitutional, and requests injunctive relief mandating a jury trial, and damages as deemed just.

**Caselaw:**

**Zappos Data Breach Litigation (2012):**

Zappos v. Various Plaintiffs: After a massive data breach, Zappos tried to enforce arbitration based on its terms of service. However, the court found Zappos' "browse wrap" agreement (where terms are linked but not explicitly agreed to) insufficient to bind users to arbitration. The Terms of Service conspicuously presented or agreed to, which can be seen as a form of hiding terms from consumers.

**Specht v. Netscape (2002):**

This case dealt with the enforceability of clickwrap agreements. The court ruled that Netscape's terms were not enforceable because they were not sufficiently conspicuous, and users did not have active notice of them. Although not explicitly about constitutionality, this case underscores the principle that consumers must have clear notice of terms to be bound by them, which relates to the broader issue of "hiding" terms.

**Violation of Due Process Under the Fifth Amendment**

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein. The Fifth Amendment to the United States Constitution provides that "[n]o person shall... be deprived of life, liberty, or property, without due process of law."

Plaintiff possesses a protected property interest in spouse's "ALJ-1" legal right to practice law, legal expertise in disability and medical claims law, and freedom from arbitrary governmental action or agency rules.

Defendants, acting under color of federal law, deprived Plaintiff of these interests by denying a spouse "ALJ-1" ability to provide legal counsel and represent this case in this court as both are victims of Rover.com.

Defendant's restrictions lack fundamental procedural safeguards, including but not limited to "the right to present evidence before a jury," rendering it constitutionally deficient under the Fifth Amendment.

As a direct and proximate result of Defendant's violation of Plaintiff's due process rights, Plaintiff has suffered economic hardship, and denial of lawful entitlements".

2. Christopher Randall Cook is an individual over the age of 18 residing in Gretna, Louisiana.

3. Janis Cook is an individual over the age of 18 residing in Chalmette, Louisiana.

4. A Place Called Rover, Inc. is a corporation incorporated in the State of Delaware and operating its business in the State of Washington. Officers for Corporation at the time of the attack were AARON EASTERLY, BRENT TURNER, CHARLIE WICKERS who were aware then as they are now that Rover.com operates illegally in most states, and BLACKSTONE INC. which Rover Agreed to be Acquired by Blackstone in $2.3 Billion Transaction November 29, 2023.

5. St. Bernard Parish Animal Control is a government agency in St. Bernard Parish, Louisiana.

6. Amanda Forde is the Director of the St. Bernard Parish Animal Control in Louisiana.

7. This case involves multiple At-Fault-Parties who have intentionally failed to respond in any manner and has not provided proper assurance of maintained Liability Insurance Company information after receiving multiple certified letters from legal counsel. This fulfills the obligation to attempt to resolve this issue prior to filing a Complaint in Federal court.

8. On December 13, 2022, Plaintiff received a letter from FEP Blue Cross and Blue Shield of Louisiana department of Subrogation and Workers compensation recovery demanding reimbursement for previously paid ER and ongoing medical expenses that have paid for the treatment of plaintiff under FEHBA 5 U.S.C § 8901-8914 states the following "Medical Insurance provided to workers by a government contract entered pursuant to FEHBA between the United States Office of Personnel Management and Blue Cross Blue Shield. The plan is financed with funds held in the US Treasury. Thus, the benefits initially paid and ongoing on behalf of MARK E. TOWNER came from funds in the U.S. Treasury and in the event of an accident caused by another party require reimbursement."

**General Allegations:**

9. Christopher Randall Cook is the legal owner for residence 3936 Dominique Dr, Chalmette Louisiana, United States (the "place of business").

10. Janis Cook, mother of Christopher Randall Cook, was the occupant of the place of business.

11. Janis Cook was offering pet sitting and boarding services through A Place for Rover, Inc.

12. St. Bernard Parish is responsible for issuing and enforcement for proper business licenses and enforcement actions to protect public interest including its Animal Control Department. The department is responsible for animal control, citations, enforcement, and licensing in the City of Chalmette, in the State of Louisiana.

13. The Defendants, Christopher Randall Cook and Janice Cook named in this complaint were unknown to Plaintiff before the dog attack.

14. Janice Cook provided pet sitting services on behalf of Rover.com "A Place for Rover Inc", under the Terms of Service agreement and, in doing the things complained of herein, was acting within the course and scope of said agency, or employment.

15. Plaintiff is informed and believes, and thereon alleges, that each Defendant who is named in this Complaint is responsible, in some manner, for the acts, omissions and occurrences alleged herein, and that Plaintiff's damages as herein alleged were proximately caused by those Defendants as a whole or separately.

16. On April 28, 2022, Defendant was contracted to board Bella, the Plaintiff's dog, with Janis Cook at the place of business.

17. Janis Cook is the owner of an American Pit Bull Terrier mixed breed dog (hereinafter "the Dog").

18. As Plaintiff entered the property outside of the place of business, on the front walkway, Janis Cook came outside of the place of business to meet the Plaintiff.

19. Janis Cook failed to secure her Dog, leaving the door to the place of business open.

20. The Dog came running out of the place of business and without provocation, viciously inflicted bodily injuries upon the Plaintiff's miniature Bichon/Poodle mix (hereinafter Bella).

21. The Dog viciously bit Bella by the neck and would not let go when ordered by Janis Cook. The Dog continued to bite and shook Bella with his grip.

22. The Plaintiff immediately tried to free Bella from the Dog's bite and reached down, and the Dog instantaneously bit his left hand. The Plaintiff, having artificial knees, fell to the ground and attempted to push Dog off Bella. The Dog would not move or let go and scratched the Plaintiff's inside leg with its claws as he was wearing shorts.

23. The Plaintiff repeatedly punched and hit the Dog on the snout and head, using his right wrist and fist but the Dog refused to let go of Bella. Janis Cook just stood screaming doing nothing to remove the Dog screaming "this has never happened before".

24. When the Plaintiff attempted to stand upright for better leverage, the Dog was distracted and released his grip on Bella for a second.

25. The Plaintiff quickly lifted Bella into his arms and applied pressure to the deep bloody wound with his left hand.

26. The Plaintiff immediately took Bella to his veterinarian's hospital office for surgery.

27. The Plaintiff was then directed by veterinarian staff to go immediately to the emergency room for treatment and they would take Bella into surgery.

28. A report was filed with St. Bernard Parish Sheriff's Office by Emergency Room personal. The following day, the Plaintiff after receiving no contact, called Animal Control and (Case # C06928691 St. Bernard Parish's Animal Control) was opened.

29. On April 17, 2023, Dr. Ross Dunbar, MD, diagnosed SLAC wrist and recommended surgery for the Plaintiff's hand to stabilize wrist and attempt to relieve ongoing pain due to Dog attack.

## FIRST CAUSE OF ACTION

**VOILATION IN WASHINGTON STATE CIVIL LAW (RCW 4.16.080) PERSONAL INJURY CLAIMS HAVE A THREE-YEAR LIMIT FROM THE DATE OF THE INJURY, WHILE WRITTEN CONTRACT DISPUTES ARE SIX YEARS (RCW 4.16.040) ALL ACTIONS WITHIN TIMELINES**

30. Each one of the allegations of the First Cause of Action stated in paragraphs 1-30 are incorporated in this cause of action.

31. Plaintiff and property sustained bodily and psychological injuries.

32. The Plaintiff's injuries will result in permanent scaring and restricted immobility in his right wrist/hand.

33. Defendant Janis Cook knew or should have known that in the absence of reasonable care the Dog would cause damage and the injury to Bella and the Plaintiff could have been prevented by the exercise of reasonable care.

34. Defendant Janis Cook and Christopher Randall Cook are strictly liable for damages for injuries to Plaintiff and Bella because the injuries could have been prevented with reasonable care.

35. Neither Plaintiff's nor Bella's injuries resulted from the provocation of the dog.

36. As a proximate result of the Dog's bites, Plaintiff suffered severe injuries, pain, and suffering. The plaintiff incurred medical expenses and will incur continued medical expenses in the future.

37. As a result of these injuries, the Plaintiff has suffered general damages.

38. The Plaintiff will also incur a loss of earning capacity.

39. The full amount of all such damage is not known currently and therefore is subject to proof at trial.

40. Wherefore, Plaintiff demands judgement for damages against Defendants for costs of this action and any other relief necessary and proper.

## SECOND CAUSE OF ACTION
## NEGLIGENCE

41. Each one of the allegations of the First Cause of Action stated in paragraphs 1-41 are incorporated in this cause of action.

42. Defendants and each of them had a duty to prevent the Dog from inflicting bodily injuries upon the Plaintiff and Bella.

43. Each Defendant's actions and omissions with respect to the care and control of the Dog constituted a breach of said Defendant's duty to prevent the Dog from attacking and inflicting bodily injuries upon the Plaintiff and Bella.

44. The sole and proximate cause of Plaintiff's and Bella's injuries and damages alleged herein was each Defendant's negligent breach of duty to prevent the Dog's attack and injury to Plaintiff and Bella.

45. Defendant, A Place for Rover, is illegally contracting with independent pet sitters who are not properly registered with the Secretary in the State's as business operators or licensed in their respective jurisdictions. (for Louisiana RS Title 12).

46. Defendant, A Place for Rover, is not enforcing its Terms of Service contract with its sitters assuring adequate safety for pets or their owners while contracting with their national corporation or ensuring adequate liability insurance exists when pets are boarded through their corporation.

47. Wherefore, Plaintiff demands judgement for damages against Defendants for costs of this action and any other relief necessary and proper.

## THIRD CAUSE OF ACTION
## NEGLIGENCE PER SE
## BASED ON VIOLATION OF ANIMAL CONTROL LAW

48. Each one of the allegations of the First Cause of Action stated in paragraphs 1-48 are incorporated in this cause of action.

49. Defendant St. Bernard Parish Animal Control has a duty to enforce its governing laws.

50. Defendant St. Bernard Parish Animal Control does not maintain a data base, as required to determine whether the Dog has attacked other dogs or persons as required by law. (Louisiana Administrative Code, Title 51, Public Health-Sanitary Code Part 3 Section 105)

51. Defendant St. Bernard Parish Animal Control failed to follow their own protocol concerning animal bites and potential rabies exposure when the Dog attacked the Plaintiff. (Infectious Disease Epidemiology Section Office of Public Health, Louisiana Department of Health Protocol dated August 28, 2019)

52. Defendant St. Bernard Parish Animal Control failed to timely investigate the dog bite until May 6, 2022, where they verified the Dog's rabies vaccination. (Case # C06928691).

53. Defendant St. Bernard Parish Animal Control's report was inaccurate and corrections to the report submitted by the Plaintiff were not updated to the report after several requests.

54. Defendant St. Bernard Parish Animal Control failed to timely investigate the Dog or impose a fine on Defendant Janis Cook for concealing the Dog. (Section 18-298, M.C.S. Ord No 25205 Section 1,3-7-13).

55. The Defendants' violation of the Ordinance was the sole and proximate cause of injury to Plaintiff and Bella on April 28, 2022.

56. The Ordinance was intended and designed to prevent the injury which Plaintiff and Bella suffered injury as alleged herein.

57. Plaintiff and Bella were members of the class of people for whose protection the Ordinance was adopted.

58. Pursuant to failure of a governmental agency to issue a citation of the Dog bite and injury to Plaintiff and Bella, the Agency has violated the Ordinance by failing to store records concerning the Dog's inflicting personal injury on any publicly accessible database as required by law.

59. Wherefore, Plaintiff demands judgement for damages against Defendants for costs of this action and any other relief necessary and proper.

## FOURTH CAUSE OF ACTION:
## NEGLIGENCE OF OWNERS OR POSSESSORS
## OF RESIDENTIAL REAL PROPERTY

60. Each one of the allegations of the First Cause of Action stated in paragraphs 1-60 are incorporated in this cause of action.

61. On April 28, 2022, the Defendants and each of them were the owners, lessors and managers or control agency of the premises where the Dog inflicted injury.

62. Prior to April 28, 2022, upon belief, the Defendants and each of them had actual knowledge that the Dog was dangerous and vicious to people upon said property.

63. Prior to and on April 28, 2022, the Defendants and each of them possessed the right, authority, means and opportunity to control the premises and the Dog, and thereby to have prevented the Dog from inflicting bodily injuries on the Plaintiff and Bella.

64. By reason of their knowledge that the Dog was dangerous and vicious to people and pets, and their control of the premises and the Dog, the Defendants and each of them had the duty to prevent injury to Plaintiff, and their unreasonable failure to do so constituted breach of that duty and was the proximate cause of the injuries and damage suffered by the Plaintiff.

65. Wherefore, Plaintiff demands judgement for damages against Defendants for costs of this action and any other relief necessary and proper.

## FIFTH CAUSE OF ACTION: PREMISES LIABILITY OF OWNER OR POSSESSOR OF COMMERCIAL REAL PROPERTY

66. Each one of the allegations of the First Cause of Action stated in paragraphs 1-66 are incorporated in this cause of action.

67. Prior to April 28, 2022, the Defendants and each of them had actual or constructive knowledge that the Dog was dangerous and vicious to people and pets upon said property.

68. By reason of their knowledge that the Dog was dangerous and vicious to people and pets, the Defendants and each of them had the duty to prevent injury to Plaintiff on the property and their unreasonable failure to do so constituted breach of that duty and was the proximate cause of the injuries and damages suffered by the Plaintiff. Additionally Defendants intentionally avoided normal service of

legal summons and complaints or disclosure of Home Owner Insurance Company information requiring the Plaintiff to secure US Marshall service to provide legal process service.

69. Wherefore, Plaintiff demands judgement for damages against Defendants for costs of this action and any other relief necessary and proper.

## SIXTH CAUSE OF ACTION:

## UNCONSTITUTIONAL USE OF TERMS OF SERVICE TO AVOID LIABILITY

70. Each one of the allegations of the First Cause of Action stated in paragraphs 1-70 are incorporated in this cause of action.

**TERMS OF SERVICE: Jeffrey Piccolo v. Disney (2023):**

Argument: Disney attempted to use terms from Disney+ streaming service and ticket purchases to force arbitration in a wrongful death lawsuit. The public and legal scrutiny focused on whether such terms were appropriately agreed upon, given their broad application. This case, while not in federal court, shows the controversy when companies attempt to enforce terms not clearly agreed to by consumers, potentially touching on constitutional rights if such terms override access to court. There's an ongoing debate about how companies present their terms of service, often buried in lengthy, fine-print documents or through ambiguous click-through agreements. This practice is criticized for effectively "hiding" terms, leading to calls for more transparent and user-friendly terms presentation. Cases like AT&T Mobility LLC v. Concepcion (2011) and Epic Systems Corp. v. Lewis (2018) deal with arbitration clauses in terms of service. These cases don't argue that terms are hidden but rather that the mandatory arbitration might infringe on the right to a jury trial or collective legal action, which could be seen as touching on constitutional issues.

**Regulatory Scrutiny:**

Regulatory bodies like the Federal Trade Commission (FTC) have been looking into how companies present terms, with a focus on ensuring consumers are not misled by the way terms are disclosed or consented to. While not directly lawsuits, these actions reflect a broader legal interest in the issue.

**Implications for Lawsuits:**

Potential Claims: Future lawsuits might explicitly argue that hidden or overly complex terms of service violate consumer rights under state unfair or deceptive practices laws or even under the U.S. Constitution for denying due process or

equal protection if these terms are used to enforce one-sided, oppressive agreements.

Class Actions: There's potential for class action lawsuits where consumers collectively challenge the legality of hidden or non-transparent terms, especially if they lead to significant consumer harm or rights violations.

## SEVENTH CAUSE OF ACTION:
## INTENTIONAL NEGLIGENCE AND UNCONSTITUTIONAL USE OF TERMS OF SERVICE TO AVOID LIABILITY AND LAWS

71. Each one of the allegations of the First Cause of Action stated in paragraphs 1-71 are incorporated in this cause of action.

**Negligence: Failure to Enforce Insurance Requirements:** If a company knows that its employees or service providers do not maintain required liability insurance but does not enforce this, it is liable for negligence if an accident or incident occurs where insurance would have mitigated damages. If a rideshare company like Uber or Lyft does not check that drivers have the necessary insurance and an accident happens, they would be sued for negligence if they had knowledge or should have known about the lack of coverage.

**Vicarious Liability**:   Unauthorized or Uninsured Acts: Companies can be held liable for the actions of their employees or contractors, especially if those actions occur within the scope of their employment or service provision. If these individuals operate without proper insurance or in violation of laws, the company might still be vicariously liable.

**Breach of Contract**:

Failure to Enforce Contractual Terms: If terms of service explicitly require insurance, not enforcing these terms could be seen as a breach of contract, especially if this failure directly leads to harm or loss for consumers or third parties.

**Statutory Violations**:

Breaking State or Local Laws: Companies can face direct liability for not complying with laws that mandate certain insurance requirements or business practices. This could include fines, penalties, or civil actions for non-compliance.

The case of Proposition 30 in California addresses insurance claim practices and civil remedies, suggesting that companies can be legally challenged for unfair handling of claims, which could extend to not ensuring proper insurance coverage.

**Unfair Business Practices:**

Companies can face claims for unfair business practices if they do not ensure their operations meet legal standards, including insurance requirements. The importance of general liability insurance is outlined in insurance guides for all states and countries. Businesses often require this from their contractors or partners. Failure to enforce this can lead to liability if an incident occurs due to an uninsured party's actions.

Companies that knowingly fail to enforce their own terms requiring insurance or that break laws face significant legal risks, potentially leading to substantial financial and reputational damage through various forms of liability claims.

**WHEREFORE** Plaintiff requests Bifurcation of the trial into two phases. Bifurcation is allowed under Rule 42(b) when it would be more convenient, avoid prejudice, or be conducive to expedition and economy.

A Summary Judgement Issued for Liability for A PLACE FOR ROVER INC, BLACKSTONE INC. (as new owner), CHRISTOPHER RANDALL COOK as owner of the property where attack took place, JANIS COOK as owner of DOG.

**Each Defendant, jointly and severally, found liable for the following, in amounts provided.**

1. Medical claims paid by FEP Blue Cross Blue Shield related to this dog attack to be settled directly with FEP BC.BS Subrogation and Worker's Compensation Recovery Unit.

2. ~$90,000 payoff SBA Disaster Assistance loan incurred by the Plaintiff to hire outside contract labor to repair Hurricane damage to his property as he was unable to do this work himself as General Contractor due to the injuries sustained.

3. $4,000 for previous legal and court expenses to date incurred by the Plaintiff.

4.     $2,000,000 deposited with the court for Plaintiff anticipated trial court legal expenses and travel through trial to be administered by the assigned Judge.

**Second Phase of Trial All Named Defendants, jointly and severally, found liable for the following in amounts determined by jury.**

1.     $5,000,000 General damages for pain, suffering, physical disfigurement, and limitations, other intangible losses sustained by Plaintiff and Bella.

5.     Loss of future earning capacity by the Plaintiff.

6.     Legal and court costs.

7.     Prejudgment and post judgment interest allowed by law.

8.     Such other and further relief as the Jury may deem proper.

The Plaintiff requests expedited preliminary hearing to perfect all claims.

The Plaintiff demands a trial by jury of all issues so triable.

Dated this 11th day of June 2025

Respectfully submitted,

*Mark E Tow* (signature)

Mark Edward Towner
21 Lakewood Pl
New Orleans, LA 70131
504-777-4396

